IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

|  |  |  |
|---|---|---|
| CEVDET URUK, | ◊ | |
| | ◊ | |
| Plaintiff, | ◊ | |
| | ◊ | |
| vs. | ◊ | No. 09-2759-BBD/tmp |
| | ◊ | |
| FEDEX CORPORATION, | ◊ | |
| | ◊ | |
| Defendant. | ◊ | |

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
(DOCKET ENTRY 8)
AND
ORDER CERTIFYING APPEAL NOT TAKEN IN GOOD FAITH

On November 23, 2009, Plaintiff Cevdet Uruk filed a pro se complaint against Defendant FedEx Corporation ("FDX") alleging acts of retaliation and national origin discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. (Docket Entry ("D.E.") 1). On February 2, 2010, FDX filed a motion to dismiss or, in the alternative, motion for summary judgment, memorandum in support, and exhibits. (D.E. 8.) On March 15, 2010, Plaintiff responded to the motion for summary judgment. (D.E. 17.) On March 22, 2010, FDX replied to Plaintiff's response. (D.E. 19.)

Defendant relies on exhibits outside the pleadings, therefore, the motion to dismiss must be treated as one for summary judgment. See Fed. R. Civ. P. 12(d). Summary judgment is appropriate "if . . . there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56©. As the Supreme Court has explained:

In our view, the plain language of Rule 56© mandates the

> entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof.

Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986) (citation omitted).

When ruling on a motion for summary judgment the court may consider pleadings, depositions, answers to interrogatories, and admissions on filed, together with the affidavits. See Fed. R. Civ. P. 56. Under Fed. R. Civ. P. 56(e)(2), "[w]hen a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must — by affidavits or as otherwise provided in this rule — set out specific facts showing a genuine issue for trial." In considering a motion for summary judgment, "the evidence as well as the inferences drawn therefrom must be read in the light most favorable to the party opposing the motion." Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88(1986)(same).

A genuine issue of material fact exists "if the evidence [presented by the non-moving party] is such that a reasonable jury could return a verdict for the non-moving party." Anderson v.

Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also id. at 252 ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict[.]"); Matsushita, 475 U.S. at 586 ("When the moving party has carried its burden under Rule 56©, its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.") (footnote omitted). The Court's function is not to weigh the evidence, judge credibility, or in any way determine the truth of the matter. Liberty Lobby, 477 U.S. at 249. Rather, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52.

I.  Relevant Facts

The relevant facts follow:[1]

---

[1] Local Rule 7.2(d)(3), provides,

> the opponent of a motion for summary judgment who disputes any of the material facts upon which the proponent has relied pursuant to subsection (2) above shall respond to the proponent's numbered designations, using the corresponding serial numbering, both in the response and by affixing to the response copies of the precise portions of the record relied upon to evidence the opponent's contention that the proponent's designated material facts are at issue.

Although Plaintiff "denies any statement contrary to his claims/pleadings", he has not responded to Defendant's designated statement of material facts using Defendant's serial numbering and by attaching copies of the precise portions of the record relied upon to evidence his dispute. The Court has attempted to construe the

1. Plaintiff was employed throughout the period in question as a Senior Financial Analyst by FedEx Services. (D.E. 1, p. 2, ¶ 7.)

2. FDX is the parent holding company of FedEx Services, and there is only a parent-subsidiary relationship between FDX and FedEx Services. (D.E. 1, p. 2, ¶¶ 7-9.)

3. Plaintiff alleges he was discriminated against and subjected to a hostile work environment by his manager at FedEx Services due to his national origin, and retaliated against by his manager for complaining about discrimination. (Id., p. 17, ¶¶ 308-323.)

4. Plaintiff's complaint asserts no allegations or facts that FDX exercised day-to-day control over the employment decisions of FedEx Services.

5. FDX is a publicly traded holding company with several distinct subsidiaries. The Parent was incorporated in the state of Delaware on October 2, 1997 as FDX. (See D.E. 8-2, Declaration of Clement Edward Klank, III, Staff Director of Securities and Corporate Law, ("Klank Decl."), ¶¶ 2-3.)

6. FedEx Services, a separate and distinct legal entity from FDX, was incorporated in the state of Delaware on February 4, 2000. (Id., ¶¶ 4-5.)

7. FDX does not issue payroll checks for FedEx Services. FDX and FedEx Services maintain separate bank accounts and separate corporate records. (Id., ¶ 6.)

8. FDX and FedEx Services have only one director in common on their Board of Directors, Frederick W. Smith. FDX and FedEx Services each employ T. Michael Glenn and Robert B. Carter as officers, though in different positions and capacities. Otherwise, they have no common officers. (Id., ¶¶ 7-8, Exhs. C and D.)

9. FDX does not exercise day-to-day control over the employment decisions of FedEx Services. FDX does not direct the decisions of the managers of FedEx Services in matters such as hiring, promotion, discipline, or termination. (Id., ¶ 9.)

---

undisputed facts from Plaintiff's verified complaint, Plaintiff's response, and Defendant's motion and reply, including the verified exhibits attached to the affidavit of Clement Klank III. The Court discerns no basis for Plaintiff's disagreement with Defendant's undisputed facts. Therefore, the Court adopts Defendant's statement of material facts as undisputed.

10. FedEx Services does not exercise day-to-day control over the employment decisions of FDX. FedEx Services does not direct the decisions of the managers of FDX in matters such as hiring, promotion, discipline, or termination. (Id., ¶ 10.)

II. Analysis

Plaintiff admits that he was employed by FedEx Services. Although Plaintiff was never employed by Defendant FDX, he has chosen to sue FDX for the alleged discriminatory actions of FedEx Services. FedEx Services is a subsidiary of FDX. The leading case in this circuit concerning the extent to which related corporations can be held liable for employment discrimination is Armbruster v. Quinn, 711 F.2d 1332 (6th Cir. 1983) overruled on other grounds by Arbaugh v. Y & H Corp., 546 U.S. 500(2006)(referring to Watson v. Gulf & Western Industries, 650 F.2d 990, 993 (9th Cir. 1981)), in which the plaintiff sought to hold a corporate parent, and its corporate parent, liable for the actions of a wholly owned subsidiary that employed fewer than fifteen individuals. The Sixth Circuit articulated the following standard:

> When exploring the limits of Title VII jurisdiction, corporate law doctrines may be helpful in our assessment of whether we should treat the defendants as separate corporate entities. However, the most important requirement is that there be sufficient indicia of an interrelationship between the immediate corporate employer and the affiliated corporation to justify the belief on the part of an aggrieved employee that the affiliated corporation is jointly responsible for the acts of the immediate employer. When such a degree of interrelatedness is present, we consider the departure from the "normal" separate existence between entities an adequate reason to view the subsidiary's conduct as that of both.

Id. at 1337 (emphasis added). "For guidance in testing the degree

of relationship," the Sixth Circuit has adopted a four-part test adopted by the National Labor Relations Board in another context. Id. That test

> assesses the degree of (1) interrelated operations, (2) common management, (3) centralized control of labor relations, and (4) common ownership. . . . While each factor is indicative of interrelation and while control over the elements of labor relations is a central concern . . . , the presence of any single factor in the Title VII context is not conclusive. All four criteria need not be present in all cases and, even when no evidence of common control of labor relations policy is presented, the circumstances may be such that the Title VII single-employer doctrine is applicable. . . .
>
> The showing required to warrant a finding of single-employer status has been described as "highly integrated with respect to ownership and operations." . . . The test may also be satisfied by a showing that there is an amount of "participation [that] is sufficient and necessary to the total employment process," even absent "total control or ultimate authority over hiring decisions."

Id. at 1337-38 (citations omitted; alteration in original); see also id. at 1338 (emphasizing "the broad and remedial purposes" of Title VII). The Sixth Circuit emphasized that the test would be satisfied where the parent "exercises a degree of control that exceeds the control normally exercised by a parent corporation which is separate and distinct from the subsidiary corporate entity." Id.

In applying the four factors set forth above, the Sixth Circuit concentrated on the relationship between the subsidiary and its immediate parent, and did not address the relationship between the subsidiary and the ultimate parent. The common ownership factor was found to be satisfied because the subsidiary was wholly owned. Id. The Sixth Circuit also found some evidence of common management, but characterized that evidence as "somewhat more sketchy." Id. at 1339. Finally, the Sixth Circuit found that "plaintiffs are entitled to the

6

inference that [the parent] exercised a significant measure of control over [the subsidiary's] hiring decisions and its financial status."  Id.  Accordingly, the Sixth Circuit held that the plaintiffs had established a prima facie case of single employer status, and the case was remanded for a consideration of whether the defendants could rebut that showing.  Id.

The other leading Sixth Circuit decision in this area is Swallows v. Barnes & Noble Book Stores, Inc., 128 F.3d 990 (6th Cir. 1997), in which employees of a bookstore operated by Barnes & Noble at a state university sought to hold the State of Tennessee liable as an employer under the ADEA and the Americans with Disabilities Act, 42 U.S.C. §§ 12111 et seq.  Barnes & Noble had entered into an agreement with the university to act as an independent contractor responsible for the operation and management of the bookstore.  The Sixth Circuit explained the various theories of liability that may be employed under the employment discrimination statutes:

> Although a direct employment relationship provides the usual basis for liability under the ADEA or ADA, courts have fashioned various doctrines by which a defendant that does not directly employ a plaintiff may still be considered an "employer" under those statutes.  In one approach, courts examine whether two entities are so interrelated that they may be considered a "single employer" or an "integrated enterprise." . . . In another approach, courts consider whether one defendant has control over another company's employees sufficient to show that the two companies are acting as a "joint employer" of those employees. . . .  A third approach examines whether the person or entity that took the allegedly illegal employment action was acting as the agent of another company, which may then be held liable as the plaintiff's employer.

Id. at 993 (citations and footnote omitted).

Applying those factors, the Sixth Circuit found that Barnes &

7

Noble and the university did not constitute a single employer.  In addition to the fact that there was "insufficient evidence of interrelation of operations," id. at 994, the Sixth Circuit found that "there is no evidence of common management," id. and, most importantly, there was no evidence that the university "controlled labor relations at Barnes & Noble," id. at 995.[2]  The Sixth Circuit also held that the State could not be held liable under an agency theory because the university "did not delegate to Barnes & Noble the authority to make employment decisions on its behalf, nor did it exercise the requisite control over Barnes & Noble's employment decisions."  Id. at 996.

FDX provides the declaration of Clement Klank, Staff Director of Securities and Corporate Law in Memphis, Tennessee.  Attached to that declaration are exhibits consisting of certificates of incorporation and listings of the Board of Directors and Officers for FDX and FedEx Services.  (D.E. 8-2.) FDX was incorporated in the State of Delaware in 1997. FedEx Services was incorporated in the State of Delaware in 2000. (D.E. 8-2, ¶¶ 3-4.)  The parent and subsidiary have only one director in common on their Board of Directors. FDX and FedEx Services have two common officers, though those persons are in different positions and capacities with each company. (D.E. 8-2, Exhs. C and D.)  FDX does not issue payroll checks for FedEx Services. (D.E. 8-2, ¶ 6.)  FDX and FedEx Services maintain separate bank accounts and separate corporate records.

---

[2] In so holding, the court emphasized that, "[a]t most, the evidence shows that [the university] had a voice in certain employment decisions at Barnes & Noble, not that it controlled those decisions in the manner seen in single employer situations."  Id.

(Id.) FDX does not exercise day-to-day control over the employment decisions of FedEx Services and FedEx Services does not exercise day-to-day control over the employment decisions of FDX. (D.E. 8-2, ¶¶ 9-10.) FDX does not direct the decisions of the managers of FedEx Services in matters such as hiring, promotion, discipline, or termination and FedEx Services does not direct the decisions of the managers of FDX in matters such as hiring promotion, discipline, or termination. (Id.)

Plaintiff denies the foregoing assertions, but does not provide any affidavit which rebuts the declaration of Clement Klank. Plaintiff directs the Court to a letter from the legal department of FDX, which requests that Plaintiff return his FedEx laptop and VPN token due to his termination and various unverified exhibits printed from internet sites, such as a Wikipedia article.[3] Plaintiff alleges that "[t]he public, the customers and even most of the employees know [FDX] ... they don't know the separation between [FDX] (Parent vs. FedEx Corporate Services Inc. (Subsidiary)." (D.E. 17-1.)

Plaintiff has not provided any facts or evidence establishing that FDX and FedEx Services have a significant interrelation of operations, common management, control over the employment decisions of managers, or common ownership and financial control. Plaintiff fails to satisfy the four-factor test to the extent necessary to hold FDX responsible for any alleged Title VII violations of FedEx Services. Defendant FDX is entitled to judgment as a matter of law.

---

[3] Documents submitted which do not comply with the requirements of Rule 56(e) must be disregarded. See Dole v. Elliott Travel & Tours, Inc., 942 F.2d 962, 968-69 (6th Cir. 1991); State Mutual Life Assurance Co. of America v. Deer Creek Park, 612 F.2d 259, 264 (6th Cir. 1979).

Defendant FDX's motion for summary judgment (D.E. 8) is GRANTED in its entirety. Accordingly, the Court DISMISSES Plaintiff's complaint.

The Court must also consider whether Plaintiff should be allowed to appeal this decision in forma pauperis, should he seek to do so. The United States Court of Appeals requires that all district courts in the circuit determine, in all cases where the appellant seeks to proceed in forma pauperis, whether the appeal is frivolous. Floyd v. United States Postal Serv., 105 F.3d 274, 277 (6th Cir. 1997).

Pursuant to the Federal Rules of Appellate Procedure, a non-prisoner desiring to proceed on appeal in forma pauperis must obtain pauper status under Fed. R. App. P. 24(a). Rule 24(a)(3) provides that if a party was permitted to proceed in forma pauperis in the district court, he may also proceed on appeal in forma pauperis without further authorization unless the district court "certifies that the appeal is not taken in good faith or finds that the party is not otherwise entitled to proceed in forma pauperis." If the district court denies pauper status, the party may file a motion to proceed in forma pauperis in the Court of Appeals. Fed. R. App. P. 24(a)(4)-(5).

The good faith standard is an objective one. Coppedge v. United States, 369 U.S. 438, 445 (1962). The test under 28 U.S.C. § 1915(a) for whether an appeal is taken in good faith is whether the litigant seeks appellate review of any non-frivolous issue. Id. at 445-46. The same considerations that lead the Court to grant Defendant's motion for summary judgment and dismiss this case compel the conclusion that an appeal would not be taken in good faith. It is

10

therefore CERTIFIED, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal in this matter by Plaintiff would not be taken in good faith and Plaintiff may not proceed on appeal <u>in forma pauperis</u>. Leave to proceed on appeal <u>in forma pauperis</u> is, therefore, DENIED. If Plaintiff files a notice of appeal, he must also pay the full $455 appellate filing fee or file a motion to proceed <u>in forma pauperis</u> and supporting affidavit in the United States Court of Appeals for the Sixth Circuit within thirty (30) days.

    IT IS SO ORDERED this 13th day of April, 2010.

                                          s/Bernice B. Donald
                                          BERNICE B. DONALD
                                          UNITED STATES DISTRICT JUDGE